UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| STEVEN PATRICK HARDY,<br><br>Plaintiff<br><br>v.<br><br>ARIF SHAIKH;<br>JULIAN GUTTIEREZ-MOLINA;<br>THEODOR VOORSTAD;<br>JOHN DOES and JANE DOES 1 - 10;<br>and<br>the PENNSYLVANIA<br>DEPARTMENT OF<br>CORRECTIONS,<br><br>Defendants | CIVIL CASE NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### PRELIMINARY STATEMENT

1. Diabetes is a serious medical condition which requires routine monitoring by a physician; failure to monitor a patient with diabetes may result in drastic health complications including amputation.

2. Defendants were, at all times relevant to this Complaint, aware of Plaintiff's diabetes diagnosis.

3. Notwithstanding Defendants' knowledge of Plaintiff's condition, Defendants intentionally disregarded Plaintiff's serious medical needs by denying and

delaying Plaintiff access to medical care in contravention of Plaintiff's rights under the United States Constitution and federal law.

4. Defendants' conduct in denying and delaying Plaintiff access to medical care was tortious and intentional or wanton.

5. Defendants unconstitutional and tortious conduct caused injury to the Plaintiff.

## JURISDICTION

6. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## PARTIES

7. Steven Patrick Hardy (hereafter "Plaintiff" or "Mr. Hardy") was at all times relative to this complaint interred at SCI Camp Hill.

8. Arif Shaikh (hereafter "Shaikh"), Julian Guttierez-Molina (hereafter "Guttierez-Molina"), and Theodor Voorstad (hereafter "Voorstad"), collectively with John Doe and Jane Doe defendants referred to as "Individual Defendants," were at all relevant times health-care professionals who treated residents of SCI Camp Hill.  They are sued in their individual capacities.

9. The Pennsylvania Department of Corrections (hereafter "PA-DOC") is a governmental entity which manages and oversees SCI Camp Hill.

## FACTUAL ALLEGATIONS

10. Mr. Hardy was diagnosed with diabetes and was subjected to amputation prior to his admission to SCI Camp Hill. Defendants knew or should have known of this fact through their own institutional records.

11. Mr. Hardy was transported to SCI Camp Hill on or about July 21, 2017 with an open wound and a prosthetic leg. Defendants knew or should have known of this fact through their own institutional records.

12. Upon admission to SCI Camp Hill, the sleeve which supports Mr. Hardy's prosthetic leg was torn and in need of replacement. Defendants knew or should have known of this fact through their own institutional records.

13. In or about August of 2017 no defendant had yet examined Mr. Hardy's prosthetic leg and sleeve, and the condition thereof had deteriorated to the point where the prosthetic would slide up and down his right leg.

14. Mr. Hardy's deteriorating and poorly fitting prosthetic caused a diabetic ulcer at the stump of his right leg. Defendants know or should have known of this fact through their own institutional records.

15. The deteriorating condition of Mr. Hardy's prosthetic leg caused a fall on at least one occasion in August of 2017.  Defendants knew or should have known of this fact through their own institutional records.

16. Notwithstanding Mr. Hardy's serious medical condition, at no time did defendants develop a cohesive plan for the treatment of Mr. Hardy's diabetic ulcers.

17. Notwithstanding Mr. Hardy's serious medical condition, at no time did defendants photographically document Mr. Hardy's wounds so that his condition could be monitored in any meaningful way.

18. Notwithstanding Mr. Hardy's serious medical condition, at no time did defendants allow Mr. Hardy access to a wound care specialist.

19. Notwithstanding Mr. Hardy's serious medical condition, at no time did defendants educate Mr. Hardy on his condition.

20. Notwithstanding Mr. Hardy's serious medical condition, at no time did defendants make a low-carbohydrate diet available to Mr. Hardy, even though defendants make such diets available to other inmates.

21. On various occasions Mr. Hardy requested medical attention relating to his diabetes and/or his amputation and/or his diabetic ulcers and such requests for medical attention were ignored or responded to in such a delayed manner as to cause additional pain and suffering to Mr. Hardy, viz.:

a. Upon being admitted to SCI Camp Hill, Mr. Hardy requested that his prosthetic leg be examined as the sleeve which holds it was torn and in need of replacement. Defendants knew or should have known of this fact through their own institutional records.

b. In lieu of an examination, Mr. Hardy was issued crutches in or about August of 2017.

c. Mr. Hardy was not examined by a health-care professional until on or about December 27, 2017 when Mr. Hardy reported to sick call. Defendants knew or should have known of this fact through their own institutional records.

d. At sick call, PA Laura refused to examine Mr. Hardy's leg which had been causing him pain. Defendant Laura declined to treat or even examine Mr. Hardy's leg. Defendants knew or should have known of this fact through their own institutional records.

e. On or about January 20, 2018 a nurse examined Mr. Hardy's leg and told him that it was warm to the touch and likely infected. Notwithstanding this, the nurse declined to treat Mr. Hardy's infection in any way. Defendants knew or should have known of this fact through their own institutional records.

f. On or about January 24, 2018, Defendant Voorstad told plaintiff that he should be treated at a hospital or wound care center and declined to treat Mr. Hardy notwithstanding the fact that Mr. Hardy was in severe pain.  Defendants knew or should have known of this fact through their own institutional records.

g. On or about January 31, 2018 Mr. Hardy again requested medical treatment, but to no avail.  Defendants knew or should have known of this fact through their own institutional records.

h. On or about February 1, 2018 Mr. Hardy reported to sick call and was not examined or treated.  Defendants knew or should have known of this fact through their own institutional records.

i. On or about February 2, 2018 Mr. Hardy spoke with Defendant Edwards who declined to treat him, instead stating that Defendant Voorstad would see him later.  Defendants knew or should have known of this fact through their own institutional records.

j. Starting on or about February 16, 2018 Mr. Hardy requested medical attention on a daily basis over the course of a week.  Specifically, Mr. Hardy requested to be given access to a wound care specialist pursuant to Defendant Voorstad's suggestion.  Mr. Hardy's requests

were ignored.  Defendants knew or should have known of this fact through their own institutional records.

k. On or about February 23, 2018 Mr. Hardy noticed that his leg had begun to bleed profusely and that he was in severe pain.  He told Defendant Voorstad of his pain and bleeding, which Voorstad treated with a bandage and pain medication.  Defendants knew or should have known of this through their own institutional records.

l. Mr. Hardy's condition continued to deteriorate and it was not until on or about March 5, 2018 that Defendant Guttierez-Molina finally relented and permitted Mr. Hardy to be admitted to the hospital.  Defendants knew or should have known of this through their own institutional records.

m. On or about March 28, 2018 Mr. Hardy requested treatment for pain in his leg and was refused.  Defendants knew or should have known of this through their own institutional records.

n. On or about April 12, 2018 Mr. Hardy experienced itchiness proximate to his wound and requested relief therefore, but this request was not responded to for five days, on or about April 17, 2018.  Defendants knew or should have known of this through their own institutional records.

22. On or about July 25, 2018 Mr. Hardy required further amputation removing the last remaining portions of bone below Mr. Hardy's knee; such surgery was caused by improper wound care for Mr. Hardy's diabetic ulcers. Defendants knew or should have known of this fact through their own institutional records.

23. Defendants' failure to provide adequate medical treatment will result in further future amputations which would have been avoidable but for Defendants' failure.

## CLAIMS FOR RELIEF

**COUNT I.    Deliberate Indifference to a Serious Medical Need in Violation of the Eighth and Fourteenth Amendments**

24. All defendants acted under color of state law.

25. The Individual Defendants were deliberately indifferent to Mr. Hardy's serious medical needs as described in greater detail above, thereby violating Mr. Hardy's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution as applied to the states through the due process clause of the Fourteenth Amendment.

**COUNT II.    Americans with Disabilities Act Claims**

26. As an amputee and a diabetic, Mr. Hardy is a qualified person with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12131 (2).

27. Defendant PA-DOC failed to make reasonable accommodations for Mr. Hardy's disability, including but not limited to failure to provide Mr. Hardy with access to a wound care specialist, failure to monitor Mr. Hardy's diabetes, failure to properly refit Mr. Hardy's prosthetic leg, failure to monitor Mr. Hardy's diabetic ulcers, failure to educate Mr. Hardy relating to his medical conditions, and failure to provide or significant delay in providing access to medical care notwithstanding frequent and repeated requests by Mr. Hardy.

**COUNT III.    State Law Medical Negligence Claims**

28. Individual Defendants had a duty to comply with generally accepted medical standards of care in the provision of medical treatment of Mr. Hardy.

29. Individual Defendants negligently, wantonly or willfully violated their respective duties of care to Mr. Hardy.

30. The Individual Defendants' violations of their duty of care to Mr. Hardy was a direct and proximate cause and a substantial factor that brought about Mr. Hardy's damages as outlined above, and as a result, Individual Defendants are liable to the plaintiff.

## COUNT IV.   Infliction of Emotional Distress

31. The conduct of Individual Defendants as described above was outrageous and extreme.  Individual Defendants acted intentionally or in deliberate disregard of Mr. Hardy's emotional distress which manifested itself in physical symptoms.  As such, the Individual Defendants' conduct constitutes the tort of intentional infliction of emotional distress.

## COUNT V.   Civil Conspiracy

32. Individual Defendants acted together with a common purpose in committing the unlawful acts alleged in Counts I, III and IV and defendants' acts in carrying out such civil conspiracy caused injury to the plaintiff. Accordingly, Defendants have committed the tort of civil conspiracy.

## REQUESTED RELIEF

Wherefore, plaintiff respectfully requests:

A. Compensatory damages as to Individual Defendants;

B. Punitive damages as to Individual Defendants;

C. Reasonable attorneys' fees and costs;

D. Declaratory, injunctive and other equitable relief as to all defendants; and

E. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

/s/ Leticia C. Chavez-Freed
Leticia C. Chavez-Freed, Esq.
PA Bar ID 323615
The Chavez-Freed Law Office
2600 N. 3rd Street
Harrisburg, PA. 17110
(717) 893-5698
(717) 893-5873 (fax)

*Counsel for Plaintiff*
