# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN PATRICK HARDY, <br><br> Plaintiff <br><br> v. <br><br> ARIF SHAIKH, et al., <br><br> Defendants | CIVIL ACTION NO. 1:18-CV-1707 <br><br> (MEHALCHICK, M.J.) |

## **MEMORANDUM OPINION**

### I. BACKGROUND

Steven Patrick Hardy ("Plaintiff" or "Hardy") filed the instant complaint while incarcerated at SCI Camp Hill ("Camp Hill"). (Doc. 1 at 2 ¶ 7). Plaintiff alleged five causes of action, including: Count I - Deliberate Indifference to a Serious Medical Need under the Eighth and Fourteenth Amendments; Count II – Americans with Disabilities Act ("ADA") Claims; Count III – State Law Medical Negligence Claims; Count IV – Intentional Infliction of Emotional Distress; Count V – Civil Conspiracy as to Counts I, III, and IV. (Doc. 1 at 8-10). Plaintiff named as Defendants Arif Shaik, Julian Guttierez-Molina, Theodore Voorstad, as well as John Doe and Jane Doe, all of whom are health-care professionals responsible for the treatment of inmates at Camp Hill, (Doc. 1 at 2 ¶ 8), and the Pennsylvania Department of Corrections ("DOC"), due to its management and oversight role at Camp Hill. (Doc. 1 at 3 ¶ 9).

Hardy's claims arise from the treatment and management of his diabetes and his right leg, which had been partially amputated prior to arriving at Camp Hill. (Doc. 1 ¶¶ 10-11). Specifically, Hardy alleges that he arrived at Camp Hill with an open wound and a prosthetic

leg, and that Defendants delayed his treatment such that his leg eventually had to be further amputated. (Doc. 1 ¶¶ 11-14; 22). Hardy further asserts that his requests for medical attention were ignored or responded to in a delayed manner, and that the improper wound care of his diabetic ulcers resulted in the need for surgery and amputation. *Id.*

Presently before this Court are a motion to dismiss, or in the alternative, for summary judgment, submitted by Defendants Guttierez-Molina, Shaikh, and Voorstad, (Doc. 15), a motion for summary judgment by Defendant Department of Corrections (Doc. 24), and a motion for a temporary restraining order and preliminary injunction filed by Plaintiff, Steven Patrick Hardy (Doc. 17). Both sets of defendants move for summary judgment solely on the issue of exhaustion of administrative remedies.[1] Following a status conference on November 20, 2018, the Court scheduled an evidentiary hearing and argument on the issue of exhaustion of administrative remedies.[2] (Doc. 21). The Court also directed all parties to provide any additional submissions on the issue of exhaustion prior to the hearing.

The Court conducted the evidentiary hearing and oral argument on November 29, 2018. Further briefs on the issue of exhaustion were filed after the hearing. The matter is now ripe for review. The issue before the Court is whether Hardy's administrative remedies were rendered unavailable due to the actions or inactions of the DOC. (Doc. 40 at 3 ¶ 10-13; Doc. 41). Hardy submits that he was never provided with an inmate handbook, that he was

---

[1] Guttierez-Molina, Shaikh, and Voorstad also move to dismiss the complaint for failure to state a claim.

[2] The Court also directed that argument would be held on Plaintiff's motion for a temporary restraining order and preliminary injunction, but argument on that motion was continued pending a decision on the issue of exhaustion.

thwarted by the prison in his attempts to go to the library, and that he was unaware that grievances could be appealed.

## II. VENUE AND JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *Curran v. Spyder*, No. 1:11–cv–2127, 2014 WL 4672457, *3 (M.D. Pa. September 18, 2014); *Kinzey v. Beard*, No. CIV A 305-2198, 2006 WL 2829000, *3-5 (M.D. Pa. September 1, 2006), *report and recommendation adopted* September 29, 2006 (2006 WL 2847333). Because the events giving rise to the claim occurred in SCI-Camp Hill, a prison located "within the confines of the Middle District of Pennsylvania," the complaint was properly brought in this district. 28 U.S.C. § 1391(b); *Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994); *Hankins v. Beard*, No. 3:CV-06-2372, 2008 WL 2950996, *9 (M.D. Pa. July 29, 2008).

## III. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Pursuant to the Federal and Local Rules of Civil Procedure, the Court accepts as true all factual statements which plaintiff does not dispute. *See Hodge v. United States*, No. 3: 06-CV-1622, 2009 WL 2843332, *13 (M.D. Pa. August 31, 2009). As to the facts which are disputed regarding PLRA exhaustion, the court weighs the testimony and evidence presented at the oral hearing, and makes judgments as needed. *Hill v. Smith*, 186 Fed. Appx. 271, 273-74 (3d Cir. 2006). An evidentiary hearing before the bench is the appropriate venue to decide an exhaustion dispute. *Paladino v. Newsome*, 885 F.3d 203, 210-11 (3d Cir. 2018) (citing *Small v. Camden County*, 728 F.3d 265, 267-68 (3d Cir. 2013)).

## IV. DISCUSSION

### A. PLRA EXHAUSTION REQUIREMENT

In 1996, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997. The PLRA mandated that prisoners exhaust all available administrative remedies prior to initiation of a suit under § 1983 for a deprivation of Constitutional rights. 42 U.S.C. § 1997(a). Previously discretionary, the PLRA made unexhausted claims

unreviewable by the District Courts. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Even where the relief sought is unavailable through administrative remedies, prisoners must pursue their claims through prison channels prior to initiation of litigation in federal courts. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Further, inmates must see their complaints through to the final review possible under the administrative review system in place. *Woodford*, 548 U.S. at 93. Claims not made within the parameters set forth by the prisons, and therefore not reviewed on the merits, are considered procedurally defaulted. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory; indeed "it is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Courts are precluded from considering unexhausted or procedurally defaulted claims. *Spruill*, 372 F.3d at 227-32.

Medical treatment received by an inmate is considered a prison condition. *Stewart v. Kelchner*, 358 Fed. Appx. 291, 296-97 (3d Cir. 2009). Proper exhaustion of administrative remedies requires substantial compliance with the rules of the internal prison grievance process, which are defined by the prison, not the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Small*, 728 F.3d at 271; *Spruill*, 372 F.3d 218 at 231. An inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 Fed. Appx. 58, 59 (3d Cir. 2005).

Inmates incarcerated with the Pennsylvania Department of Corrections have the following administrative grievance process available to them:

> The DC-ADM 804 grievance system consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See *Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804, § 1(A)(11).

*Hughes v. Hayes*, 2018 WL 6697184 at *4 (W.D. Pa. Dec. 20, 2018); (Doc. 26 at 1 ¶ 3); (Doc. 40 at 2 ¶ 3).

The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *see also Washington-El v. Collins*, No. 3:12-CV-1979, 2016 WL 5338709, *7-8 (M.D. Pa. June 21, 2016) (stating defendants must carry "burden of proof and persuasion" when asserting affirmative defense of failure to exhaust administrative remedies). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)). Administrative remedies are considered unavailable if the inmate is unable to use them. *See Small*, 728 F.3d at 272.

"Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016);

quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001). There are three circumstances in which the PLRA may not be "available" to a prisoner:

> (1) when it operates as a simple dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when it is so opaque that it becomes, practically speaking, incapable of use, such as when no ordinary prisoner can discern or navigate it; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Rinaldi v. United States*, 904 F.3d 257 (3d Cir. 2018).

Hardy does not dispute that he failed to exhaust his administrative remedies by failing to appeal to the Superintendent or to Final Appeal with the Secretary's Office of Inmate Grievances and Appeals (Doc. 26 at 3 ¶ 9); (Doc. 40 at 2 ¶ 9). As such, he must demonstrate that the administrative remedy procedure was unavailable as to him, such that his failure to exhaust is excused.

B. AVAILABILITY OF THE GRIEVANCE PROCEDURES

An inmate's administrative remedy may be "unavailable" where prison officials thwarted an inmate's exhaustion efforts by providing misleading filing instructions, *see Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002), and when they "failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Supt. Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (State prison's administrative remedy process which did not contemplate an appeal from a non-decision thwarted the inmate's advancement of his claim through the appeal process). Additionally, where prison officials deter an inmate from pursuing an administrative remedy by making "serious threats of substantial retaliation ... and bodily harm," the administrative remedy process is not "available." *Rinaldi*, 904 F.3d at 267. In *Rinaldi*, the Third Circuit adopted a two-part analysis of a failure-to-exhaust defense, requiring an inmate to show both

that a prison official's serious threats of retaliation made administrative remedies unavailable when "the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process"; and that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Rinaldi*, 904 F.3d at 268; quoting *Turner*, 541 F.3d at 1085.

There is no evidence in the record that Hardy experienced threats that would deter an inmate from lodging a grievance or pursuing part of the process. The evidence also does not establish that he was thwarted by a prison official misleading him, or failing to follow-up on his requests or grievances. Nor does the record establish that officers were unable or consistently unwilling to provide any relief to aggrieved inmates, or that Hardy found the process so opaque that it became incapable of use. As such, the Court does not find that exhaustion was rendered unavailable to Hardy.

### 1. Handbook and Information on Appeal Process

Hardy first asserts that prison officials "never informed [him] of the rules and procedures of the grievance system" and he was "without a handbook or any other information which would instruct him on how to take an appeal to a grievance." (Doc. 40 at 3 ¶ 10-11). Even if the prisoner does not receive a handbook explaining the grievance procedure, where an inmate was generally aware that he could complain about prison conditions and of the administrative remedy system in place, he is not excused from using that process. *See Meanor v. Wilcox*, 241 Fed. Appx. 856, 858 (3d Cir. 2007). Here, the fact that Hardy filed numerous grievances betrays his knowledge of the grievance process. *See, e.g.,* (Doc. 28 at 45). Further, every grievance form completed by Hardy directs him to the

grievance policy, DC-ADM 804. (See generally Doc. 26-3 through Doc. 26-13). Additionally, Hardy states that he learned of the grievance process "through medical." (Doc. 45 at 132 ¶ 8-11). Further, despite Hardy's claim that he did not receive a handbook, the record reflects that on July 24, 2017, Hardy did acknowledge receipt of the handbook. (Doc. 45 at 13; 119).

Regardless of his actual receipt of the grievance handbook, Hardy was clearly aware a grievance process existed at Camp Hill which allowed him to complain about prison conditions and therefore his actual receipt, or not, of the prison handbook which contained instructions about the prison grievance process is not dispositive as to the administrative procedure's availability. As to his claim that he was without any information on how to take an appeal, "an inmate's subjective lack of awareness regarding administrative remedies will not excuse compliance." *Miller v. Schuylkill County Prison*, No. 1:CV-07-0331, 2007 WL 3342766, *1 (M.D. Pa. November 9, 2007). Hardy's claim that he was unaware of the appeal procedure does not excuse his failure to exhaust administrative remedies where there is no evidence of prison officials taking affirmative steps to prevent the use of grievance procedures.

### 2. Thwarting of Grievance Process

Hardy also asserts that on "various occasions" defendants refused to provide him with grievance forms or accept appeals from him, refused an appeal from him, and misled him as to the appeals process. (Doc. 40 at 3 ¶ 12-13). However, cutting against Hardy's credibility on this is first that he was able to file multiple grievances, and that he testified in court that he "never had a problem getting a grievance when I was on the block" (Doc. 45 at 124 ¶ 9-15). Moreover, despite having alleged that two corrections officers refused to give him forms, his testimony revealed that the officers told him that the infirmary was out of grievance forms, not that the officers refused to give him any forms. (Doc. 45 at 123). Hardy never had any

trouble getting writing materials or paper during that time. (Doc. 45 at 124). Further, Hardy testified that he was told by his counselor, Mrs. Perry, to "fill out another one and send it in." (Doc. 45 at 131 ¶ 17-24). Because appeals can be made on the same form as the initial grievance, the Court does not find that this is a clear misrepresentation by a prison official. (Doc. 45 at 73 ¶ 1-14). Additionally, although claiming that he was prevented from going to the library, he testified that he only asked to go to the library twice, and he was told it was "already filled up." (Doc. 45 at 122). Nothing in the record substantiates Hardy's allegation that any prison official refused to provide him with forms, misled him, or refused an appeal from him.

When conflicting testimony exists over whether grievance forms were available to inmate, the court must weigh the evidence and ultimately choose one side or the other. *See Hill v. Smith*, 186 Fed. Appx. 271, 273-74 (3d Cir. 2006). Further, an appeal may be rejected when the internal grievance policy requires it to be labelled as an appeal, but the inmate fails to do so. *Nickens v. Dept. of Corr.*, 277 Fed. Appx. 148, 152 (3d Cir. 2008). On one occasion, the prison official rejected plaintiff's appeal because "nowhere [on the form] does it say that he was appealing." The grievance procedures at Camp Hill require an appeal be labeled as such. (Doc. 26-1 at 15 ¶ d(1)). At no point in the record does Hardy cite to any specific grievance form which indicates it was an appeal.

Finally, Hardy alleges that "[d]efendants refused on various occasions… to accept grievance forms from [him]." (Doc. 40 at 3 ¶ 12). In support of this assertion, Hardy cites to an unsubmitted declaration. (Doc. 40 at 3 ¶ 10-13 n. 1). The onus falls on Hardy to show that such remedies were unavailable to him. *Rinaldi*, 904 F.3d at 268. At the hearing, Hardy relied on his counsel to assert that he "has been refused grievance forms." (Doc. 45 at 155 ¶ 4-5).

However, Tonya Heist, the Superintendent's Assistant at Camp Hill, testified that Hardy never told her orally or in writing that he was having any difficulty receiving or submitting grievance forms. (Doc. 45 at 17 ¶ 4-7). Further, in response to questioning by Hardy's counsel, Heist averred that she had never heard of correctional officers refusing to give out grievance forms. (Doc. 45 at 83 ¶ 6-16). The court credits the testimony of Heist over plaintiff's counsel's summation, and plaintiff has not produced any other evidence to support his assertion. See *Horan v. Collins*, 2016 WL 5030468, *11 (M.D. Pa. August 8, 2016) (granting motion defendant's motion for summary judgment based on failure to exhaust pursuant to the PLRA because plaintiff cannot create a disputed issue of fact by merely offering unsupported conclusory assertions) (internal citations omitted).

In sum, to defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate. *Rinaldi*, 904 F.3d at 269. This test maintains the exhaustion requirement for the vast majority of claims and allows otherwise unexhausted claims to proceed only in the exceptional circumstance where the facts alleged would reasonably give rise to a substantial fear of serious harm, filtering for those threats so serious as to lead a rational inmate to forego the benefits of administrative review. *Rinaldi*, 904 F.3d at 268–69 (internal citations omitted). Here, the Court does not find that Hardy has shown the existence of threats so serious (or actually any threats) as to lead a rational inmate to forego the benefits of administrative

review.[3] Further, even if he had met his burden on this component of the test, he fails to show that any purported threat was so serious that he was subjectively deterred. He continued to file grievances related to his medical care, the very same subject he grieved in the instant matter. See *Victory v. Berks Cty.*, No. CV 18-5170, 2019 WL 1507769, at *6–7 (E.D. Pa. Apr. 5, 2019) (inmate testified that she feared filing a grievance would lead to further retaliation and harassment, but did file grievances directed to other prison officials); cf. *Rinaldi*, 904 F.3d at 270 (finding that a willingness to file grievances unrelated to and regarding far less inflammatory subjects is not dispositive of subjective deterrence). As such, the Court does not find that the administrative remedy procedures were rendered unavailable to Hardy.

V. <u>TEMPORARY RESTRAINING ORDER (TRO); PRELIMINARY INJUNCTION (PI)</u>

Pursuant to Federal Rule of Civil Procedure 65, Hardy has moved for a "Temporary Restraining Order and Preliminary Injunction" to order plaintiff's transfer to a hospital. (Doc. 17 at 1 ¶ 1). Motions for PIs and TROs are analyzed using an identical test. *See Snow*, 2014

---

[3] At the evidentiary hearing on this matter, for the first time in this case, Hardy's counsel attempted to introduce letters related to a prison official's treatment of Hardy *after* this lawsuit was filed, and months after the time would have expired for Hardy to appeal the grievances at issue here. As such, the Court determined that evidence to be not relevant to the claims before the Court, and noted there is no retaliation claim before the Court, and that the hearing and issue was on the issue of whether he had exhausted his remedies related to his medical care. (Doc. 45 at 136-137). In making this ruling, the Court is not precluding the possibility that Hardy may have other claims related to the actions described in those letters, the description of which by counsel is very serious and concerning. It may also be that ***with regard to those grievances***, the allegations presented by counsel may support a finding that the grievance process was rendered unavailable to Hardy. However, the scope of the hearing and the claims before the Court are simply to determine whether Hardy did exhaust the grievances he filed related to his medical care between January 5, 2018 and March 30, 2018 (Doc. 26-2 through Doc. 26-12). Counsel for Hardy conceded that the allegations in the letters post-dated the filing of the lawsuit. (Doc. 45 at 136:20-22). Hardy offered no testimony or other evidence that he was threatened or in fear of harm in relation to the grievances at issue in the hearing.

WL 4384649, *16; 19. The moving party seeking a preliminary injunction or temporary restraining order must demonstrate: (1) the likelihood of success on the merits; (2) that the party will suffer irreparable harm by the denial of the injunction; (3) that granting the relief will not result in even greater harm to the other interested party; and (4) the public interest will not be adversely affected by the granting of relief. *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987); *In Re Arthur Treacher's Franchise Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982). The PLRA's exhaustion requirement applies to motions for preliminary injunctions and temporary restraining orders. *Hill v. Smith*, 186 Fed. Appx. 271, 273-74 (3d Cir. 2006); *see Snow v. U.S.*, No. 3:13–0789, 2014 WL 4384649, *16; 19 (M.D. Pa. September 4, 2014).

"[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Arthur Treacher's,* 689 F.2d at 1143. Courts consider the PLRA's exhaustion requirement under the likelihood of success on the merits prong in analyzing whether to grant a PI or TRO. *See Snow,* 2014 WL 4384649, *16; 19. If the court finds the plaintiff-inmate failed to exhaust administrative remedies, the court may decline to discuss factors two through four. *See Hammonds v. Religious Accommodation Comm. at Camp Hill,* 4:13–CV–1470, 2013 WL 3475118. *4 (M.D. Pa. July 9, 2013). *See also Lasko v. Henderson*, No. 3:CV-05-0991, 2006 WL 2828787, *5-6 (M.D. Pa. September 29, 2006) (granting summary judgment for defendants due to prisoner-plaintiff's failure to exhaust administrative remedies and dismissing as moot plaintiff's motion for preliminary injunction without discussion). Having determined that Hardy failed to exhaust his administrative remedies, Plaintiff's motion for a temporary restraining order and preliminary injunction is denied as moot.

## VI. CONCLUSION

Based on the foregoing, the Court finds administrative remedies at Camp Hill were available to Hardy and that he failed to exhaust them. That failure to exhaust compels judgment in Defendants' favor. See *Peet v. Beard*, No. 3:10-CV-482, 2015 WL 7568300, *10 (M.D. Pa. November 25, 2015) (finding prisoner-plaintiff's failure to exhaust administrative remedies "compel judgment in the defendant's favor of [plaintiff]'s remaining claims"). As such, Defendants' motion for summary judgment (Doc. 24) and motion to dismiss (Doc. 15) are **GRANTED**. Plaintiff's motion for temporary restraining order and preliminary injunction is **DENIED**.

An appropriate Order follows.

                                              **BY THE COURT:**

**Dated: April 19, 2019**                     *s/ Karoline Mehalchick*
                                           **KAROLINE MEHALCHICK**
                                           **United States Magistrate Judge**